RUSSELL et al. v. SHIPPEN BROS. LUMBER CO. et al. (BURTZ et al., Interveners).

(District Court, N. D. Georgia. December 17, 1915.)

No. 71.

ATTORNEY AND CLIENT ⚮166—EMPLOYMENT OF COUNSEL BY CORPORATION—VALIDITY OF CONTRACT.

    A contract, made by a corporation, by its president, and ratified by its board of directors, employing attorneys to defend the corporation in a pending suit and to resist the appointment of a receiver, which they did successfully, *held* legal and valid, and to entitle the attorneys to recover the fee agreed upon therein, on their discharge by a subsequent board of directors.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 368–372; Dec. Dig. ⚮166.]

⚮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by Charles Russell and others against the Shippen Bros. Lumber Company and others. In the matter of the intervention of A. H. Burtz and Charles T. & Linton C. Hopkins. On exceptions to master's report. Overruled, and report confirmed.

See, also, 224 Fed. 254.

Charles T. & Linton C. Hopkins, of Atlanta, Ga., and A. H. Burtz, of Ellijay, Ga., for interveners.

D. W. Blair, of Marietta, Ga., for defendants.

NEWMAN, District Judge. The intervention in this case was referred to Frank E. Callaway, Esq., standing master, and his report is as follows:

"I, Frank E. Callaway, standing master, to whom this intervention was referred by the court's order of July 10, 1915, for the purpose of investigating the issues of law and fact presented by the pleadings in said intervention, respectfully report as follows:

"The intervention was assigned for a hearing before me on September 21, 1915, by consent of parties, and came on for a hearing on that date. It proceeded from time to time and day to day, as is disclosed by the stenographer's report of the evidence, until the evidence was all in and argument made by counsel. The evidence introduced consists of the original record, pleadings, and the evidence introduced upon the various hearings of the above-stated cause before Hon. Don A. Pardee and Hon. Wm. T. Newman, with the orders thereon; also the testimony of various witnesses, which was stenographically reported.

"In response to a notice to produce by plaintiff in the intervention, an agreement was filed and is a part of the evidence in the case, same being signed by attorneys for plaintiff and defendant in the intervention, this agreement relating to the holdings of the Shippen Bros. Lumber Company, and also an agreement that Exhibit E, attached to the original intervention in this case, represents legal formal action had by the board of directors of Shippen Bros. Lumber Company, that said action is binding upon said company, and also that Exhibit F is a correct copy of a letter sent by Shippen Bros. Lumber Company through its president, Charles E. Patton, on February 20, 1915.

"All of said evidence is herewith filed and accompanies this report. All objections to the evidence are duly noted, as well as exceptions to the rulings of the master, and same are fully disclosed by the stenographer's report of the trial. After considering all of the evidence and argument, I make the following report:

"Findings of Fact.

"(1) I find that on September 5, 1914, the original bill for receiver against the Shippen Bros. Lumber Company was filed and presented to Hon. Don A. Pardee, United States Circuit Judge, who was authorized to hold the District Court of this district. Two or three days after the filing of that bill, interveners were employed by the president and general manager of the Shippen Bros. Lumber Company to defend the company in the litigation. At that time, it was directed alone against the corporation.

"(2) I find that supplemental bill and amendments filed by complainants brought in other parties as parties defendant, namely, W. H. and F. E. Shippen, but all of said bills and amendments reiterated the original prayers for the appointment of a receiver, and I find that interveners successfully represented the corporation in those matters.

"(3) I find that a verbal contract was made by W. H. Shippen, president of the Shippen Bros. Lumber Company, with interveners to represent the company in this litigation at the time that the original bill was filed, and I find that later on, namely, on October 2, 1914, this verbal contract was reduced to writing as follows:

" 'Georgia, Fulton County.

" 'Messrs. A. H. Burtz and Charles T. & Linton C. Hopkins are hereby employed to represent the Shippen Bros. Lumber Company in the case of Russell et al. v. Shippen Bros. Lumber Company et al., pending in the United States District Court for the Northern District of Georgia. In the event said litigation should be lost and a receiver appointed, the fee is to be forty-five hundred ($4,500.00) dollars; in the event the litigation is successfully defended, and no receiver is appointed, then the fee is to be seventy-five hundred ($7,-500.00) dollars. This contract imposes no personal responsibility upon either W. H. or F. E. Shippen. [Signed] Shippen Bros. Lumber Co.,
" 'W. H. Shippen, Pres.'

"(4) I find that the employment of interveners was ratified by the board of directors of the Shippen Bros. Lumber Company at a meeting held in October, 1914, and said board was adjudged by Hon. Wm. T. Newman, in the litigation, to be the legally constituted board of directors. I find that the following resolution was passed by the board:

" 'Be it resolved by the board of directors of the Shippen Bros. Lumber Company that:

" 'Whereas, Messrs. Charles T. and Linton C. Hopkins, attorneys at law, of Atlanta, Georgia, and Mr. A. H. Burtz, Ellijay, Georgia, appear of record as attorneys for Shippen Bros. Lumber Company in the litigation of Chas. S. Russell et al. v. Shippen Bros. Lumber Company et al. in the District Court of the United States of the Northern District of Georgia; and

" 'Whereas, there is a conflict of interest between Shippen Bros. Lumber Company and William H. and F. E. Shippen, it is not deemed by this board proper that the interest of this company and Wm. H. and F. E. Shippen should be represented by the same attorneys in said cases:

" 'Be it further resolved, that the president of this company is given the full power and authority of this company to discharge attorneys in any case now pending or which may hereafter be brought for or against said Shippen Bros Lumber Company, and to employ other counsel to represent the interests of this company in such cases now pending or to be hereafter brought and in such other matters which in the advice of counsel may be by him deemed necessary.'

"(5) I find that the duties of the president of the Shippen Bros. Lumber Company, as shown by the by-laws of the company, were as follows: 'Subject to their by-laws and to such regulations as the board of directors may, from time to time, make, the president shall have the chief management, control, and supervision of the affairs of the company. It shall be his duty to preside at all meetings of the board, to preserve order, and promote the regular and speedy transaction of business. All purchases, repairs, and contracts shall be made under his authority, except when otherwise provided by the board. He shall fix the price for all lumber, shingles, lath, and all material sold by said company, and determine and regulate the terms upon which the same are to be sold, all of which is subject to the approval of the executive committee.'

"(6) I find that said employment in behalf of the corporation was recognized by adverse counsel and the court, and that upon the record and evidence produced in behalf of said corporation a receivership was denied.

"(7) I find that on February 20, 1915, the present board of directors of the Shippen Bros. Lumber Company impliedly recognized the employment of said interveners, in that said board authorized the president to sever interveners' representation of the corporation, and that in pursuance of said authority the president did sever said representation.

"(8) I find that the services of interveners were beneficial to the corporation; that Hon. Wm. T. Newman has adjudged that no receivership could be had for the corporation upon any of the grounds alleged in any of the pleadings.

"(9) I further find that the fee stipulated for in the contract was reasonable. Expert testimony upon this point was to the effect that the importance of the representation and the work done, and the size and assets of the corporation, would have authorized a much larger fee.

"(10) I find, from the evidence produced, that the assets of the corporation amount to at least $750,000, if not more, and that the liabilities did not exceed $95,000.

"(11) I further find that the contract of employment was within the scope of the authority of the president, and ratified by the board of directors, which was the then legal board, and that same was not in conflict with the corporate interest, and that the services rendered were material and directly in line with the corporate interest.

"Findings of Law.

"I therefore find that interveners are entitled to recover of the Shippen Bros. Lumber Company the principal sum of $7,500, with interest at 7 per cent. from February 20, 1915."

The conflict as to which of two boards of directors was the legal board of directors of the Shippen Bros. Lumber Company has already been determined; this court having held that the stockholders' meeting attempted to be held at Ellijay, Ga., on September 16, 1914, was without effect as to the election of a board of directors, on account of the confusion that existed. There was a ruling by the court to this effect in the opinion filed November 13, 1914, in which this was said:

"I am satisfied that the attempt to hold a stockholder's meeting and an election of directors at Ellijay in September was a failure. I do not believe that any proper and legal election of directors was held. The minutes of two meetings are presented, and they show such unsatisfactory proceedings held as, in my opinion, the court should decline to consider it a valid election either way."

So that, until the regular annual election held sometime thereafter, W. H. and F. E. Shippen and their associates were the regular authorized board of directors of the company. This board of directors employed Mr. Burtz and Messrs. Hopkins, as will be seen by the contract made, to resist the application for a receiver and the appointment of a receiver for the Shippen Bros. Lumber Company.

While it is true that there was a conflict of interest between the Shippens individually and the Shippen Bros. Lumber Company, I am not prepared to disagree with the master, who held in effect that that had nothing to do with this particular matter. The effort on one side was to have a receiver appointed for the company and on the other side to resist it. I thought then, and think now, that there was no necessity for a receiver, and I further thought then, and think now, that it would have been injurious to the interest of the Shippen Bros. Lumber Company if a receiver had been appointed for it.

I think the arrangement with Messrs. Burtz and Hopkins as attorneys must be considered a contract between them and the corporate entity, the Shippen Bros. Lumber Company. Certainly it cannot be considered so clearly otherwise as to justify the court in differing with the master's conclusions. The purpose of the bill originally, and at the time counsel were employed in the case, was mainly to have a receiver appointed for the company's property, and while this was subsequently changed by supplemental bill and amendments to include other defendants, the application for a receiver ran all through the proceeding and was continued until a receiver was denied by the court. Even if the court could interfere with the enforcement of this contract upon the ground that the fee was excessive, I am not prepared to say, in view of the amount involved, that it was so excessive as to

justify such interference. The master has found that it was a reasonable fee, and indicated in his report that it might well have been larger. He says:

"Expert testimony introduced upon this point was to the effect that the importance of the representation and the work done, and the size and assets of the corporation, would have authorized a much larger fee."

He further finds that the assets amounted to at least $750,000, and that the liabilities did not exceed $95,000.

I am satisfied that all of the exceptions to the master's report should be overruled, and the report confirmed; and it is so ordered.